IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2025

## STATE OF TENNESSEE v. TRA'SHAWN GLASS

**Appeal from the Criminal Court for Knox County**
No. 125669   Steven Wayne Sword, Judge

_____

### No. E2024-01243-CCA-R3-CD

_____

Defendant, Tra'Shawn Glass, entered guilty pleas to three counts of vehicular homicide, four counts of drag racing resulting in serious bodily injury, and two counts of reckless aggravated assault resulting in serious bodily injury. Following a sentencing hearing, the trial court merged various convictions and imposed an effective twelve-year sentence to be served in confinement. On appeal, Defendant contends that the trial court erred in ordering him to serve a sentence of full confinement and in imposing consecutive sentences. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Michael T. Cabage, Knoxville, Tennessee, for the appellant, Tra'Shawn Glass.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Charme P. Allen, District Attorney General; and Leland Price, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

On January 17, 2023, Defendant was drag racing with co-defendant, Trinity Divine Clark, on a public street in Knox County, Tennessee, when Defendant crashed into a vehicle driven by Michael Williams, killing Mr. Williams and seriously injuring Mr.

Williams' five-year-old granddaughter, H.T., and eleven-year-old grandson, M.T.[1] Defendant was subsequently indicted on three counts of vehicular homicide of Mr. Williams; two counts of drag racing resulting in serious bodily injury and one count of reckless aggravated assault resulting in serious bodily injury to H.T.; two counts of drag racing resulting in serious bodily injury and one count of reckless aggravated assault resulting in serious bodily injury to M.T.; two counts of drag racing resulting in serious bodily injury and one count of reckless aggravated assault resulting in serious bodily injury to Defendant's passenger; and one count of driving without a license.

On April 24, 2024, Defendant entered guilty pleas to three counts of vehicular homicide, four counts of drag racing resulting in serious bodily injury, and two counts of reckless aggravated assault resulting in serious bodily injury. Pursuant to the plea agreement, the State agreed to dismiss the counts listing Defendant's passenger as the victim and the count of driving without a license. The State also agreed that the vehicular homicide convictions would merge into one conviction and that the drag racing convictions for each of the minor victims would merge into the corresponding reckless aggravated assault convictions, resulting in one vehicular homicide conviction and two reckless aggravated assault convictions. There was no agreement as to a specific sentence Defendant would receive.

According to the facts stipulated by the parties at the plea hearing, the crash occurred on January 17, 2023, at 3:11 p.m. on Magnolia Avenue in Knox County. Defendant was driving a 2015 Dodge Charger, and the co-defendant was driving a 2013 Dodge Charger. They were beside each other at a traffic light on Cherry Street when they turned left onto Magnolia Avenue and began drag racing. Larry Johnson was behind them and stated that they were traveling at a "very high rate of speed" and appeared to be racing. As Defendant and the co-defendant were racing eastbound on Magnolia Avenue, Mr. Williams was driving his 1998 Ford Explorer westbound down the same street, and his two grandchildren were passengers. As Mr. Williams was turning left at a green light at an intersection, Defendant struck Mr. Williams' vehicle at a high rate of speed, seriously injuring Mr. Williams and his two grandchildren. H.T. was thrown from the vehicle, and Mr. Williams died from his injuries. The co-defendant continued driving and ultimately crashed into a building located approximately one block away from the crash site. Police officers interviewed the co-defendant, who admitted that "they might have been drag racing." Crash data obtained from the two Chargers indicated that they were approaching speeds of 100 miles per hour while drag racing moments before the crash.

---

[1] Because it is the policy of this court to protect the identify of minor victims of criminal offenses, we will refer to the minor victims by their initials.

The trial court ensured that Defendant understood the terms of the plea agreement and his rights. The court then accepted the guilty pleas and scheduled a sentencing hearing.

During the July 26, 2024 sentencing hearing, the State entered Defendant's presentence report as an exhibit. According to the presentence report, the twenty-two-year-old Defendant had prior misdemeanor convictions for evading arrest and unlawful possession of a weapon, as well as multiple arrests while he was a juvenile. The State noted that in December 2022, Defendant pleaded guilty to evading arrest and unlawful possession of a weapon and was placed on judicial diversion, that Defendant committed the instant offenses approximately one month later, and that his diversion was subsequently revoked as a result.

The State also presented victim impact statements from Mr. Williams' daughter, who was also the mother of the minor victims, the minor victims' father, and Mr. Williams' niece. They described Mr. Williams as someone who was "selfless" and would "give the shirt off his back for anybody," and they also described Mr. Williams' close relationship with his family and the impact of his death on the family members. According to the minor victims' mother, M.T. sustained a concussion, multiple disfiguring lacerations to his face, multiple broken bones, a dislocated hip, a shattered pelvis, a torn bladder, and a damaged liver as a result of the crash. H.T. suffered a traumatic brain injury, a torn exterior ligament, a torn spleen, an injury to her lungs, internal bleeding, and multiple fractures to her jaw, neck, ribs, arm, wrist, and pelvis. H.T. was in a coma for a period and was placed on a ventilator. The minor victims were continuing to recover from their injuries at the time of the sentencing hearing and will suffer lifelong disabilities.

Defendant presented a letter from a prior teacher and twenty-four certificates from classes that he attended while in custody. He also gave an allocution during which he expressed remorse and apologized for his conduct.

The State argued for the application of multiple enhancement factors and for consecutive sentences to be served in confinement. Defendant argued for consideration of his acceptance of responsibility, his completion of classes while in custody, his "minimal" prior criminal history, and his support from his family and community members. Defendant noted that he had been in custody for approximately eighteen months and requested a sentence of split confinement "based upon what he served." He asserted that if the trial court determined that a sentence of imprisonment was warranted, the court should impose the minimum sentence for each offense and run the sentences concurrently to each other.

The trial court stated that in determining Defendant's effective sentence, it considered the evidence presented at the sentencing hearing, the presentence report, the

arguments of both parties, the principles of sentencing, the nature and characteristics of the criminal conduct, mitigating and enhancing factors, statistical information from the Tennessee Administrative Office of the Courts, Defendant's allocution and letters of support, and the victim impact statements.

The court found that Defendant was a Range I, standard offender and noted the applicable sentence range for each conviction. The court applied the following enhancement factors: (1) "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;" (7) "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;" (10) "[t]he defendant had no hesitation about committing a crime when the risk to human life was high;" and (13) the defendant was released on "probation" at the time of the offenses. *See* Tenn. Code Ann. § 40-35-114(1), (7), (10), (13). In mitigation, the court considered Defendant's acceptance of responsibility, his "minor record," his completion of classes while incarcerated, and his support from his family and community members. *See* Tenn. Code Ann. § 40-35-113(13).

The court recognized that Defendant was eligible for probation but found that confinement was necessary to avoid depreciating the seriousness of the offenses. *See* Tenn. Code Ann. § 40-35-103(1)(B). The court stated that when comparing the instant case to other cases of reckless aggravated assault, the instant case "is probably the most horrific one that I've seen in the thousands of cases that I have dealt with, the damage to these children" and that the injuries sustained by the minor victims will be "life long and life altering." The court continued, "I can't imagine having aggravated assault that is not more serious than this that didn't get elevated to a homicide. It's a miracle that these children are alive and probably a testament to, to their strength and their family's strength." The court determined that this provision "weighs very strongly in favor of incarceration."

The court also found that "confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses." Tenn. Code Ann. § 40-35-103(1)(B). The court reasoned:

> We have media here today. They have been following this case very closely from the moment it happened. The media has been very much in tune with this case, which is unusual. We generally don't have cameras in the courtroom. But there—this case has got a lot of attention from the media. A part of it is because of the damage to the kids, but also to the very high speeds and the, the extreme recklessness and behavior of the individuals involved in this. And so I do think our legislature has taken steps to increase the punishment on these, and I think the community is paying attention to what happens here today. . . . I'm sure that [the victims'] family want nothing more

- 4 -

than this to never happen to another family again, and I certainly feel that way, and so I do think confinement can be in effect a deterrence to others for similar behavior.

The court noted that Defendant was on judicial diversion when he committed the offenses and found that "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully" to Defendant. Tenn. Code Ann. § 40-35-103(1)(C). The court did not give the provision "a great deal of weight." The court found that Defendant had "some potential" for rehabilitation based on his expression of remorse during his allocution.

In imposing consecutive sentences, the court found that Defendant is "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4). The court found that the circumstances surrounding the commission of the offenses were aggravated, noting that Defendant was going four times over the speed limit in a "very populated area" and that the minor victims suffered "very extensive" and "life altering" injuries. The court also found that an extended effective sentence was necessary to protect the public from further criminal conduct by Defendant and that consecutive sentences were reasonably related to the severity of the offenses committed. The court noted that Defendant's recent convictions for evading arrest and unlawful possession of a weapon indicate that "this was not an isolated event at this point in time in [Defendant's] life" and that Defendant "was making a lot of poor choices at this point during his life." The court found that Defendant was on judicial diversion when he committed the offenses, which also justified consecutive sentences. *See* Tenn. Code Ann. § 40-35-115(b)(6).

The court stated that if it imposed maximum sentences for each conviction and ordered that the sentences be served consecutively, Defendant would receive an effective fourteen-year sentence. The court determined that although the maximum sentences for the offenses were justified based on Defendant's behavior in committing the offenses, his acceptance of responsibility warranted a one-year reduction from the four-year maximum sentence for each of the reckless aggravated assault convictions. The court imposed six-year sentences for the vehicular homicide convictions and three-year sentences for the reckless aggravated assault and drag racing convictions. The court merged the vehicular homicide convictions into one conviction, the convictions for drag racing resulting in serious bodily injury to H.T. to the corresponding conviction for reckless aggravated assault resulting in serious bodily injury, and the convictions for drag racing resulting in serious bodily injury to M.R. to the corresponding conviction for reckless aggravated assault resulting in serious bodily injury. The court ordered that Defendant serve his sentences in confinement and that the sentences for vehicular homicide and reckless

aggravated assault be served consecutively, for an effective twelve-year sentence. Defendant filed a timely notice of appeal.

## II. Analysis

Defendant challenges the trial court's order imposing consecutive sentences and requiring him to serve his sentences in confinement. The State responds that the trial court acted within its broad discretion in imposing the sentences.

## A. Standard of Review

We review the length and manner of service of within-range sentences imposed by a trial court under an "abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). Our supreme court has stated that "the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions." *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) (citing *State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013)). This standard also applies to "questions related to probation or any other alternative sentence," *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012), as well as to a trial court's decision to impose consecutive sentencing, *see Pollard*, 432 S.W.3d at 860.

Nevertheless, to be afforded deference on appeal, the trial court must "place on the record any reason for a particular sentence." *Bise*, 380 S.W.3d at 705. There is no presumption of reasonableness when the trial court fails to consider and weigh the applicable factors. *King*, 432 S.W.3d at 327-28; *Caudle*, 388 S.W.3d at 279. However, as this court has observed:

> [T]rial courts need not comprehensively articulate their findings concerning sentencing, nor must their reasoning be "particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706. Instead, the trial court "should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision[-]making authority." *Id*.

*State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *4 (Tenn. Crim. App. Apr. 12, 2023) (alterations in original), *no perm. app. filed*.

- 6 -

We will uphold the trial court's sentencing decision on appeal "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. A defendant bears the burden of proving that the sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

## B. Confinement

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(c)). Rather, the "advisory" sentencing guidelines provide that a defendant, "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A).

Generally, probation is available to a defendant whose actual sentence imposed is ten years or less, and his or her underlying offense is not excluded by law. Tenn. Code Ann. § 40-35-303(a). The defendant must prove his or her suitability for probation. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Id.* (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C). When addressing a defendant's suitability for probation, the trial court also should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017).

Defendant was convicted of vehicular homicide, a Class C felony, and two counts of reckless aggravated assault, a Class D felony. *See* Tenn. Code Ann. §§ 39-13-102(a)(1)(B)(i), (e)(1)(A)(v); 39-13-213(a)(1), (3), (b)(1). As a Range I, standard offender, Defendant was subject to a sentence of three to six years for vehicular homicide and two to four years for reckless aggravated assault. *See* Tenn. Code Ann. § 40-35-112(a)(3), (4). The trial court imposed the maximum six-year sentence for vehicular homicide and a mid-range sentence of three years for each reckless aggravated assault conviction. Defendant does not challenge the length of these individual sentences on appeal but argues that the trial court abused its discretion in ordering that the sentences be served in confinement.

In ordering Defendant to serve his sentences in confinement, the trial court found that (1) "[c]onfinement is necessary to avoid depreciating the seriousness of the offense"; (2) "confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; and (3) "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully" to Defendant. Tenn. Code Ann. § 40-35-103(1)(B), (C). On appeal, Defendant only challenges the trial court's finding that confinement is suited to effectively deter others likely to commit similar offenses.

When the denial of probation is based solely on deterrence, this court must apply a "heightened standard of review." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order). The record must establish that "(1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000). However, when a trial court denies probation based upon a combination of factors and those factors are supported by the record, "the heightened standard of review" is not applicable. *Sihapanya*, 516 S.W.3d at 476; *see State v. Ward*, No. E2018-01781-CCA-R3-CD, 2019 WL 3244991, at *9-10 (Tenn. Crim. App. July 19, 2019) (declining to apply the "heightened standard of review" set forth in *Hooper* because denial of probation was based on the need to avoid depreciating the seriousness of the offense, the need for deterrence, and the nature and circumstances of the offense).

The record reflects that in denying Defendant's request for alternative sentencing, the trial court considered the purposes and principles of sentencing, the circumstances of the offenses, and the evidence presented at the sentencing hearing. In determining that confinement was necessary to avoid depreciating the seriousness of the offenses, the trial court emphasized the minor victims' extensive injuries and stated that the circumstances of the reckless aggravated assaults were "probably the most horrific one[s] that I've seen in the thousands of cases that I have dealt with." The court relied upon Defendant's receiving judicial diversion in a separate case approximately one month prior to his

commission of the instant offenses in finding that measures less restrictive than confinement had recently been applied unsuccessfully to Defendant. The court relied upon the extensive publicity that the case had received in finding that confinement is suited to provide an effective deterrence to others. Although Defendant contends that the trial court erred in relying on the publicity received in the case, our supreme court has recognized "*substantial publicity beyond that normally expected in the typical case*" as a factor that the trial court may consider in determining whether confinement will provide an effective deterrence. *Hooper*, 29 S.W.3d at 11 (emphasis in original).

The record reflects that the trial court weighed the applicable sentencing factors and imposed a sentence of confinement that was consistent with the purposes and principles of sentencing. We, therefore, conclude that the trial court did not abuse its discretion in ordering Defendant to serve his sentences in confinement.

## C. Consecutive Sentences

Under Tennessee Code Annotated section 40-35-115, a trial court has discretion to order a defendant convicted of more than one offense to serve the sentences consecutively if the court finds at least one of the statutory grounds to be present. *Pollard*, 432 S.W.3d at 859-60; *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013). Relevant to this case, a trial court may order consecutive sentencing upon finding by a preponderance of the evidence that the defendant committed the offense while on probation or that the defendant "is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4), (6). When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. *See State v. Lane*, 3 S.W.3d 456, 460-61 (Tenn. 1999); *State v. Wilkerson*, 905 S.W.2d 933, 937-38 (Tenn. 1995).[2]

On appeal, Defendant does not challenge the trial court's imposition of consecutive sentencing based on a finding that he committed the offenses while on "probation" pursuant to Code section 40-35-115(b)(6). Instead, Defendant alleges that the trial court erred in finding that he is "a dangerous offender whose behavior indicates little or no regard for

---

[2] The State argues in a footnote in its brief that "*State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 2005), was incorrectly decided and should be overturned." Our supreme court has recognized that the application of an abuse of discretion with a presumption of reasonableness standard of review when considering consecutive sentencing based upon the "dangerous offender" category in Code section 40-35-115(b)(4) does not eliminate the requirements in *Wilkerson*. *Pollard*, 432 S.W.3d at 863. We are bound by the holdings of our supreme court.

human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. 40-35-115(b)(4). Specifically, Defendant maintains that there was no evidence that he had "no hesitation" before committing the offenses. He also maintains that due to evidence of his remorse, acceptance of responsibility, and amenability to correction, an extended sentence is unnecessary to protect the public from further criminal conduct.

We conclude that the trial court made appropriate findings supporting the conclusion that Defendant's behavior indicated little or no regard for human life and that he had no hesitation about committing a crime in which the risk to human life was high. The court found that Defendant was traveling at an excessive speed while drag racing down a public road in a populated area when he struck a vehicle occupied by the victims, killing Mr. Williams and severely injuring the minor victims. The court also appropriately considered the nature of the offenses and Defendant's commission of the offenses shortly after receiving judicial diversion for criminal offenses in a separate case in finding that the aggregate sentence was reasonably related to the severity of the offenses and that extended confinement was necessary to protect the public from his further criminal conduct.

Defendant argues that due to his expression of remorse and acceptance of responsibility, the trial court failed to impose an effective sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-103(2), (4). Although the trial court found that the maximum effective fourteen-year sentence was warranted under the facts and circumstances of the case, the court considered Defendant's expression of remorse and acceptance of responsibility and reduced the effective sentence to twelve years. The record reflects that the trial court imposed a sentence that was consistent with the purposes and principles of sentencing, and Defendant has failed to establish that the trial court abused its discretion in imposing the sentence.

## III. Conclusion

Upon reviewing the record, the parties' briefs, and the applicable law, we affirm the judgments of the trial court.

_____ s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE
